MARY E. HICKEY, ET AL. *v.* EUGENE C. PECK, ET AL.

[No. 78, October Term, 1941.]

*Decided January 13, 1942.*

The cause was argued before SLOAN, JOHNSON, DELA-PLAINE, and COLLINS, JJ.

*Wm. Aleck Loker,* with whom was *Francis W. Hill, Jr.,* on the brief, for the appellant.

*Aloysius F. King, Philip H. Dorsey, Jr.,* and *John H. T. Briscoe,* for the appellees.

JOHNSON, J., delivered the opinion of the Court.

This proceeding was instituted in the Circuit Court for St. Mary's County, in equity, by Mary E. Hickey against Eugene C. Peck, Katherine S. H. Peck, his wife, the County Commissioners of St. Mary's County, and Harrison Hobbs, late County Treasurer, for the purpose of having declared null and void a tax sale and a tax deed. Edgar D. Turner, Philip H. Dorsey, Jr., trustees, and William T. Abbott petitioned for leave to intervene and were by order of the court made parties complainant.

The bill of complaint recites that on September 5, 1934, the plaintiff Hickey purchased from George L. Pumphrey, widower, certain land in the Third Election District of St. Mary's County, known and described as lots Nos. 16, 17 and 18 in Block No. 38 of the sub-division known as "St. Clement's Shores," as appeared from a certified copy of a deed being therewith filed and marked "Complainant's Exhibit A"; that said land was purchased subject to a lien of a certain deed of trust from Pumphrey to Philip H. Dorsey et al., dated July 11, 1934, and recorded among the Land Records of St. Mary's County, Maryland, a certified copy of said deed of trust being therewith filed

and marked "Complainant's Exhibit B"; that an investigation by Mrs. Hickey showed that on December 12, 1938, a pretended sale was made by Harrison Hobbs, late County Treasurer for St. Mary's County, purportedly for state and county taxes due and in arrears for the year 1937; that the same was purchased by the County Commissioners of St. Mary's County, a body corporate, for the sum of $12.36, and said sale was ratified on February 24, 1940, and a deed conveying said real estate was executed by the said Harrison Hobbs and the County Commissioners of St. Mary's County to Peck and Wife on March 12, 1940, and recorded among the Land Records of St. Mary's County, a certified copy of said instrument being filed and marked "Complainant's Exhibit C"; that the plaintiff is a resident of the District of Columbia and does not subscribe to or receive any of the newspapers published in St. Mary's County, Maryland, and she had no notice or knowledge of said sale until a few months previously when she accidently learned that said property had been sold for non-payment of taxes.

The sixth paragraph alleges that acting through her agent, Edgar D. Turner, she requested the County Treasurer to inform her or her agent of any and all sales or anticipated sales of property in said sub-division, in which request the County Treasurer acquiesced, but did not notify your oratrix or her agent of the sale of the pendency of the same; that the plaintiff was never notified that the taxes were in arrears on said property, and the advertisement of said sale was irregular and improper in law, in that it did not properly describe said property which consists of a house and other improvements, and three lots, and was advertised merely as a house and lot.

It is then alleged that notice of said tax sale was not adequately or properly published, because the County Treasurer did not offer said property in parcels less than the whole, although the same was susceptible of division without detriment; that the order of publication was not published for the length of time required by law, and being a non-resident Mrs. Hickey had no knowledge that

the said Peck and Wife claimed ownership thereof and had been using the same since date of the deed to them; that the real estate was a valuable water front property, and was at the time of the sale and is now worth at least $1,000; that the plaintiff had always been prepared and ready and was at the time of the filing of the bill prepared and ready to pay all state and county taxes properly chargeable against said property, and that the tax sale and the subsequent conveyances of said property was irregular and illegal and absolutely void, but casts a cloud upon the title of the petitioner.

The prayers of the bill are, (a) that the tax sale and deed to Peck and wife may be declared unlawful, null and void; may be cancelled by a decree of the court; (b) that Peck and wife may be restrained in from any manner interfering with occupancy or use of said land by the plaintiff, her agents and tenants, and that they may be further enjoined from alienating or encumbering said land; and (c) for general relief.

The defendants filed their answers to the bill of complaint, denied its material averments and insisted that the sale as made was valid, and as such was binding upon the plaintiffs. Testimony was later taken before the examiner and submitted to the chancellor for a decree. He filed an opinion holding that the necessary requirements of a valid tax sale had been complied with and decreed that the bill of complaint be dismissed, with costs to the defendants. Later, on a petition for a rehearing, he again considered the cause and found no reason to change his opinion. The appeal to this Court is from his original decree of June 23, 1941.

The complainant's petition lists nine reasons why the tax sale mentioned in the proceedings should be set aside. We will discuss these in the order raised.

1. Inadequacy of price.

It is contended, because the property was assessed for taxable purposes at $600, and valued generally at a higher figure was sold for taxes at $12.36, the sale should be set aside. If this proposition is tenable, practically all tax

sales made by every taxing authority would be void. Inadequacy of price may be considered in connection with other matters to justify setting aside a sale, but by itself is not a sufficient reason, unless it shocks the conscience of the court. An entirely different standard of inadequacy is applicable to tax sales, because the purchaser there buys, knowing the uncertainty of his title which is reflected in his offer, and if the claim of the taxing authority is satisfied by the amount of the bid, he gets the property for the amount of the taxes, interest and costs. Under such circumstances, where the owner of the property has not thought it worth while to pay taxes on the property, courts will not look too closely at the amount of the purchase price in the absence of any other circumstances. In this case no purchaser appeared and the property was sold to the commissioners, who were clearly not authorized to pay more than the amount actually due.

2. The report of sale made by the Treasurer was not filed within the time required by law.

The Code of Public Local Laws, Article 19, Section 61, prescribes the method for the Treasurer of St. Mary's County to make tax sales. It states that, "Immediately after the sale of any real estate by said county treasurer, he shall report the same to the Circuit Court." Here the sale was made December 12, 1938. The report of sale was sworn to January 19, 1939, and filed January 28, 1939. The delay is not such as to invalidate the sale, especially when its effect, if any, gave the owners more time in which to redeem the property.

3. There was no non-resident publication of notices as required by law.

By the section previously quoted, it is provided that, "If it appears from the report of sale that any of the said delinquent taxpayers are non-residents of the State of Maryland, the said clerk shall issue and cause to be published an order of publication to non-residents, as is required in suits in equity." This was not done in the present case, although Mrs. Hickey was a non-resident.

However, that statute does not impose this duty on the Treasurer, but places it upon the clerk of the court, and then only when it appears from the report of sale that the delinquent taxpayer is a non-resident. This the report does not do, hence there was no duty upon the clerk to make such publication, nor was there any duty placed upon the Treasurer to investigate the residences of the delinquent taxpayers, and in the absence of evidence showing that the Treasurer knew that Mrs. Hickey was a non-resident, the duty of notifying her does not exist.

4. The property was not properly described in the advertisement.

This question is raised, because three lots were sold in one parcel. The lots were each 20 feet wide and 105 feet deep, and the evidence shows that a small bungalow was built across all three of the properties, which were treated as one parcel, and the property was therefore, assessed as a house and lot. Obviously to have described it as three lots, when one house occupied the three, would have misled rather than informed the buying public.

5. The property was not assessed to the owner or advertised in the name of the trustees, who held the legal title.

In *Hill v. Williams,* 104 Md. 595, 65 A. 413, 414, it is said: "It is not compatible with public convenience and the prompt collection of revenue for the State to trace out all the subdivided or qualified interests that may be held in real estate and seek to hold the various owners responsible. Its policy is to assess the fee-simple value of the land to the holder of the possession, where its real owner is not apparent or accessible, leaving the parties interested to adjust the proportions of liability between themselves."

That quotation is approved in the case of *Winter v. O'Neill,* 155 Md. 624, 142 A. 263. The County Treasurer does not assess property, but takes the assessment given him by the County Commissioners. It has always been the practice in this State to assess property to the equitable owner, and when there is a mortgage upon it, such

owner is entitled to possession and is bound by his mortgage to pay the taxes. This practice was impliedly approved fifty years ago in the case of *Allen v. County Commissioners of Harford County,* 74 Md. 294, 22 A. 398.

6. The sale of the property was not advertised at the time required by law.

The statute provides that the notice of sale shall not be made before the first of February in the year following the levy, but the Treasurer, in his discretion, may extend the time. Here the Treasurer waited until November to start advertising. The effect of this was to give the complainants more time to redeem their property and they are not in position to raise the objection. It is possible that the County Treasurer might have been compelled by the county authorities to advertise the sale in August, but that is not the proceeding before us. The delay of nine months is no substantial deviation from the wording of the statute so as to invalidate the entire tax sale.

7. The order *nisi* was not published as required by law.

Section 61 of Article 19, Code of Public Local Laws, 1930, provides that after the expiration of twelve months from the date of filing of the report of sale, the clerk of the court shall cause to be published an order of ratification *nisi* "as is required in sales made by said court, sitting as a court of equity," which order *nisi* "shall be published for three consecutive weeks" in the same newspaper in which the advertisements and sales were published. The order *nisi* in this case was filed by the clerk of the court on January 29, 1940, and provided that the sales reported on January 28, 1939, be ratified and confirmed, unless cause to the contrary be shown on or before the third Monday in February, 1940, provided it be published for three consecutive weeks before said date. The third Monday in February, 1940, was February 19, and the first publication appeared on February 2. Only seventeen days therefore, elapsed and this is not three consecutive weeks within the meaning of the statute. *Winter*

*v. O'Neill,* 155 Md. 624, 142 A. 263. It seems clear, therefore, that the order *nisi* was not published in accordance with the statute, but the sale of this unredeemed property was finally ratified by the court on February 24, 1940, as appears from the order of final ratification filed in case No. 541, Petitions, entitled "In the matter of the sales of real estate in St. Mary's County, Md., made by Harrison Hobbs, 'late County Treasurer for the years 1936 and 1937," the papers in that case having been submitted to the court by agreement of counsel as a part of the record in the present case. The question, therefore, arises as to what effect on a tax sale is an order *nisi* not published in accordance with the statute when the sale has been finally ratified by the court. There is no doubt that had this been the Treasurer's advertisement of sale, it would have been fatally defective, but the sale has been made and the proceedings reported to the court, and the clerk published the order. The statute further provides that, "If upon review of all the proceedings had in the case of such tax sale, the court considers that the law pertaining to the same shall have been fully complied with, he shall thereupon sign one general order of final ratification of all such unredeemed sales, and the Treasurer shall convey by good and sufficient deed the real estate so sold to the purchaser or purchasers thereof."

The general rule as to the effect of ratification of sales by a court of equity was established in Maryland as far back as 1855, when the court, in *Brown v. Gilmor's Executors,* 8 Md. 322, said: "Public policy and justice to parties interested require that the ratification of judicial sales by courts having jurisdiction over the same should be final and conclusive, unless irregularly made by the court, or unless the purchaser was prevented by misrepresentation, surprise or fraud, from making his objection to the ratification in due time; and it must further appear that such misrepresentation, surprise or fraud, resulted from some act or conduct upon the part of the trustees, or on the part of those interested in the proceedings."

This statement of the law has been quoted and affirmed in the later cases of *Forest Lake Cemetery v. Baker,* 113 Md. 529, 77 A. 853; *Gottschalk Company v. Samuelson,* 128 Md. 541, 97 A. 1003; and *Clemens v. Union Trust Co.,* 170 Md. 520, 185 A. 462.

Tax sales were not formerly required to be ratified, but after the statute was passed requiring sales to be reported to the court, Judge Alvey, in a well-considered opinion, discussed the effect of ratification as follows: "Before the passage of the statute requiring the collector to report the sale, together with all the proceedings had in relation thereto, to the courts for confirmation, a sale made by a collector for taxes could only be supported upon its being made to appear *affirmatively* that all the provisions of the statute authorizing the sale had been strictly complied with. The power of sale vested in a collector of taxes is a naked power, specially conferred by statute, to be exercised under a proceeding *ex parte* in its character, and the effect of which is to divest a citizen of his property without his consent, and often without his actual knowledge. It was, therefore, established, as an indubitable principle, that a purchaser, who claimed under a power of this nature, should show affirmatively and positively the regularity of the proceedings upon which his title depended. *Alexander v. Walter,* 8 Gill, 239, 260 [50 Am. Dec. 688]; *Williams v. Peyton's Lessee,* 4 Wheat. 77 [4 L. Ed. 518]; *Thatcher v. Powell,* 6 Wheat. 119 [5 L. Ed. 221]. But to relieve the purchaser of his *onus,* and to give encouragement to purchasers at tax sales, the statute now in force (Act of 1874, Ch. 483, Sec. 51) provides that the collector shall report the sale, and the proceedings in relation thereto, to the courts mentioned in the Act; and the court, to which such report shall be made, shall examine the said proceedings, and if the same appear to be regular and the provisions of law in relation thereto have been complied with, shall order notice to be given by advertisement, &c., to show cause, if any they have, why said sale should not be ratified and confirmed; and if no sufficient cause be shown

against the ratification, 'the said sale shall, by order of said court, be ratified and confirmed, and the purchaser shall, on payment of the purchase money, have a good title to the property sold,' &c. This statute confers upon the courts designated a special and limited jurisdiction, which attaches upon the report of the collector; and though the sale may be confirmed by the court, the order of confirmation operates only to relieve the purchaser of the *onus* of proof, and to cast the *onus* of showing the illegality of the proceedings upon the party resisting the sale. The effect, therefore, of the order of ratification is only *prima facie* in support of the sale, not conclusive; the sale, under the order of confirmation, affording evidence of a good title, until successfully assailed by evidence showing illegality in the proceedings upon which it is founded. *Guisebert v. Etchison,* 51 Md. 478. Until such proof is offered by the assailing party, the sale, if ratified and confirmed, stands good and effective, by operation of the statute. But where, as in this case, it is affirmatively shown that no legal or sufficient notice was given of the time and place of sale, the *prima facie* effect of the order of ratification is overcome, and the whole proceeding is thereby rendered null and without effect. *Alexander v. Walter,* 8 Gill, 239, 260 [50 Am. Dec. 688]; *Ronkendorf v. Taylor's Lessee,* 4 Pet. 349, 365 [7 L. Ed. 882]. This would seem to be clearly the result of the authorities, where the statutes do not declare the effect of the order of ratification to be conclusive of the legality of all the previous proceedings." *Steuart v. Meyer,* 54 Md. 454, 465.

This case was cited and the situation further discussed in the case of *McMahon v. Crean,* 109 Md. 652, 666, 71 A. 995, 997, wherein the court said: "It is only necessary that there shall be a substantial compliance with the tax law under which the sale was made. *Guisebert's Case, supra; Textor v. Shipley, supra,* 86 Md. 424, 38 A. 932. The court will presume that the collector has discharged his duty, and no presumption will be invoked against the validity of the proceedings. But where it appears by the

record, or by proof, that material and substantial pro-visions of the law have not been observed in making the sale, it will be treated utterly null and void."

From all the aforegoing, it seems clear that there is a difference to be noted between the effect of ratification of sales in equity generally, and the ratification of tax sales. In the case of equity sales, generally they are not made until the court has acted upon them. They are merely executory contracts and are made binding against the purchaser only when the ratification is ordered, while in the case of tax sales the Treasurer has done his duty and the sale has been made when he complies with the statute and makes his report. The proceedings that follow are for the purpose of creating a presumption that the sale is good and protecting the purchaser to that extent. Had this question arisen before the final ratification was signed, a new publication would, no doubt, have been ordered. It did not so arise, and in the opinion of the court the ratification cured the imperfect publication of the order *nisi,* and the presumption is now in favor of the validity of the sale. It seems that the tax sale is completed when the Treasurer files his report and that the publication of the order *nisi* and the ratification of sale are part of the ordinary processes of the court. They are not subject to the same strict rules of construction as are the proceedings prior to making sale.

8. The twenty-day notice to delinquents as required by law.

Provision of this notice is found in Article 19, Code, Pub. Loc. Laws, 1930, Section 61, but there is nothing in the record which indicates that this was not given. On the contrary, the testimony of the deputy treasurer is that this twenty-day notice was actually published and hand-bills were posted as required by law.

9. The County Commissioners of St. Mary's County were not authorized to purchase property at tax sales.

There seems to be no provision in the Local Laws of St. Mary's County authorizing the commissioners to pur-

chase property at tax sales. The present general law, passed in 1929 and codified as Section 87, Article 81, Code, Public General Laws of Maryland, 1939, authorizes such purchases and this Act went into effect on June 1, 1929, which was before the purchase in this case was made.

The question of the right of the City of Cumberland to purchase at tax sales was recently raised, and discussed by the Court of Appeals. There was no specific power in the charter of Cumberland authorizing such purchase, and the general statute did not mention any municipalities other than Baltimore City. The charter of Cumberland did authorize the city to purchase and hold real estate, and the court held it would not restrict that authority, and that the City of Cumberland had authority to buy in at tax sales before the adoption of the enabling Act of 1929, codified in Article 81, Section 87. *Young v. Mayor and City Council of Cumberland*, 170 Md. 505, 185 A. 450.

County commissioners have all the general powers and authorities and more than municipalities. *Talbot County Commissioners v. Queen Anne's County Commissioners*, 50 Md. 245; *Gordon v. Commissioners of Montgomery County*, 164 Md. 210, 164 A. 676.

Under their general powers they clearly have the right to protect the recovery of overdue taxes by purchasing the property even without a specific statute.

In considering all the questions the court has borne in mind the principle that while there must be substantial compliance with the provisions of law authorizing the sale of property for the purpose of collecting taxes, nevertheless slight deviation should not be allowed to avoid this necessary public function, which is part of our system of government for requiring every owner of property to bear his just proportion of expense.

No substantial deviation from the law has been found from this tax sale, and for that reason we agree with the chancellor below that the bill of complaint should be dismissed.

*Decree affirmed, with costs.*