2003-NMCA-094

75 P.3d 396

**William COCHRELL and Nancy J. Cochrell, Plaintiffs–Appellees,**

v.

**John A. MITCHELL and Sharon O. Mitchell, Defendants– Appellants,**

and

**New Mexico Taxation and Revenue Department, Defendant– Appellee.**

**No. 23,163.**

Court of Appeals of New Mexico.

May 28, 2003.

John A. Mitchell, Mitchell and Mitchell, Santa Fe, NM, for Appellants.

Jane Bloom Yohalem, Santa Fe, NM, for Appellees Cochrell.

Patricia A. Madrid, Attorney General, Lewis J. Terr, Special Assistant Attorney General, Santa Fe, NM, for Appellee New Mexico Taxation and Revenue Department.

## OPINION

PICKARD, Judge.

{1} This case involves the validity of a tax sale pursuant to which property that belonged to Defendants was sold to Plaintiffs to pay delinquent taxes. After the sale, Plaintiffs sued to quiet title and Defendants defended on the basis that the sale was invalid because of multiple deficiencies in the notice of sale and because of the New Mexico Taxation and Revenue Department's (Department) inadequate consideration of the property owner's interest in setting the sale price for the property. The trial court granted summary judgment to Plaintiffs on the issues surrounding the notice of sale and, following trial, entered judgment for Plaintiffs because it found that the Department's procedure in selling the property adequately accounted for the property owner's interest. Defendants appeal, contending that there must be strict compliance with the statutes permitting sales of property to pay delinquent taxes. We disagree and affirm.

## PERTINENT STATUTES

{2} The governing statute is NMSA 1978, § 7–38–70 (1982), which provides:

**Issuance of deeds as result of sale of real property for delinquent taxes; effect of deeds; limitation of action to challenge conveyance.**

A. Upon receiving payment for real property sold for delinquent taxes, the division shall execute and deliver a deed to the purchaser.

B. *If the real property was sold substantially in accordance with the Property Tax Code [Articles 35 to 38 of Chapter 7 NMSA 1978], the deed conveys all of the former property owner's interest in the real property* as of the date the state's lien for real property taxes arose in accordance with the Property Tax Code, subject only to perfected interests in the real property existing before the date the property tax lien arose.

C. After two years from the date of sale, neither the former real property owner shown on the property tax schedule as the delinquent taxpayer nor anyone claiming through him may bring an action challenging the conveyance.

D. Subject to the limitation of Subsection C of this section, in all controversies and suits involving title to real property held under a deed from the state issued under this section, *any person claiming title adverse to that acquired by the deed from the state must prove, in order to defeat the title, that:*

*(1) the real property was not subject to taxation for the tax years for which the delinquent taxes for which it was sold were imposed;*

*(2) the division failed to mail the notice required under Section 7–38–66 NMSA 1978 or to receive any required return receipt;*

*(3) he, or the person through whom he claims, had title to the real property at the time of the sale and had paid all delinquent taxes,* penalties, interest and costs prior to the sale as provided in Subsection E of Section 7–38–66 NMSA 1978; *or*

*(4) he, or the person through whom he claims, had entered into an installment agreement to pay all delinquent taxes,* penalties, interest and costs prior to the sale as provided in Section 7–38–68 NMSA 1978 and that all payments due were made timely.

(Emphasis added.) NMSA 1978, § 7–38–67(E) (2001) states:

Before the sale, the department shall determine a minimum sale price for the real property. *In determining the minimum price, the department shall consider the value of the property owner's interest in the real property,* the amount of all delinquent taxes, penalties and interest for which it is being sold and the costs. The minimum price shall not be less than the

total of all delinquent taxes, penalties, interest and costs. Real property may not be sold for less than the minimum price unless no offer met the minimum price when it was offered at an earlier public auction. A sale properly made under the authority of and in accordance with the requirements of this section constitutes full payment of all delinquent taxes, penalties and interest that are a lien against the property at the time of sale, and the sale extinguishes the lien.

(Emphasis added.) NMSA 1978, § 7–38–66 (2001) provides the requirements for notice to the owner of the sale, and Section 7–38–67(B) states, "Notice of the sale shall be published in a local newspaper. . . . The notice shall state the time and place of the sale and shall include a description of the real property sufficient to permit its identification and location by potential purchasers."

## FACTS AND PROCEDURE

{3} Defendant John Mitchell is a lawyer. Together with his wife, he bought a vacant lot in the Belicia Estates subdivision adjoining the community of Eldorado south of Santa Fe in 1995. They paid more than $100,000 for the property. The full assessed values of the property for 1995 and 1996 were over $144,000 and $126,000 respectively, and the taxable values were over $48,000 and $42,000 for the same years. Defendants did not pay taxes on the property for the years 1995–98.

{4} In February 1999, Michael Hooper, the team leader in the property division who was responsible for the sale of this property, called Mr. Mitchell to tell him that the taxes were delinquent and the property would be sold unless the past due taxes were paid. Mr. Mitchell told Mr. Hooper that the taxes would be paid by March 10, 1999. When Defendants did not pay the taxes, the Department prepared for the sale.

{5} On July 7, 1999, the Department mailed Defendants a notice of sale. The notice was sent certified mail, and the Department received a return receipt, which Mr. Mitchell admitted he signed. The notice to Defendants stated that the total of tax, penalties, and interest due on Lot 17, Belicia Estates, T15N R10E S 5 3.601 AC, was

$3,914.72 and that unless Defendants paid the tax or entered into an installment agreement, the property would be sold at public auction on August 5, 1999. The published notice of sale read, in relevant part, as follows:

NOTICE OF PUBLIC
AUCTION SALE OF
REAL PROPERTY FOR
DELINQUENT PROPERTY
TAXES STATE OF NEW
MEXICO TAXATION AND
REVENUE DEPARTMENT
PROPERTY TAX DIVISION

Telephone # : (505) 827–0881, –0882, –0883, –0878

Notice is hereby given that, pursuant to provisions of Section 7–38–65 NMSA 1978, the Property Tax Division of the Taxation and Revenue Department will offer for sale at public auction, in SANTA FE COUNTY, beginning

TIME: 9:00 AM/PM

DATE: August 05, 1999

LOCATION: SANTA FE COUNTY COURTHOUSE

DRAWER T

SANTA FE NM 87504–0000

Treasurer Telephone # : (505) 986–6253

the sale to continue until all the following described real property has been offered for sale.

The terms of the sale will be explained prior to the sale and will be provided by the Property Tax Division upon request. Registration will close promptly at the start of the sale. Contact Property Tax Division personnel or the County Treasurer for exact location where the auction will be conducted.

Done at Santa Fe, New Mexico, this day: July 07, 1999.

* * *

ITEM 49

1   551859 1995

RESOLUTE LAND & CATTLE CO.

LOT 17 BELICIA ESTATES

T15N   R10E S 5 3.601 AC

IN SANTA FE ON CALLE CABITO
Minimum Bid: $4,000

{6} Mr. Hooper testified that, in setting the minimum bid at $4,000, he did not specifically consider, and add an amount to the taxes owed that would represent, the value of the owner's interest in the property. Instead, he said it was his experience that the value of the property owner's interest would be best protected by setting the minimum price at a round number just above the amount of taxes owed. It was also Mr. Hooper's experience that increasing the minimum price led to too many no-bids in the past. In this case, there were thirty or forty people in the auction room, and several bid on the property at first, but then the auction continued with only two people bidding until the property was finally sold to Plaintiffs for $32,000. Plaintiff William Cochrell testified that he would not have paid even half of the lower appraised value of $126,000 at a tax sale because a tax sale gave only a quitclaim deed and because of the expense involved in obtaining merchantable title. In fact, he indicated that he probably would not have been interested if the property's minimum bid had been $20,000. He testified that the $32,000 he paid was somewhat due to the excitement of the bidding process because he had not wanted to pay that much.

{7} Following the complaint to quiet title and answer, Plaintiffs and the Department sought summary judgment because none of the irregularities mentioned in the answer amounted to one of the four grounds listed in Section 7–38–70(D) as the sole grounds for challenge to a tax deed and because Defendants' challenge was otherwise without merit. The trial court refused to limit Defendants' challenge to the Section 7–38–70(D) grounds inasmuch as Section 7–38–70(B) requires a tax sale to be substantially in accordance with the tax statutes; however, it granted summary judgment to Plaintiffs with regard to Defendants' allegations concerning the notice of sale, but required a trial on Defendants' allegations concerning the minimum sale price. Following trial, the trial court entered findings and conclusions, which included findings and conclusions that the Department did not take the owner's interest into consideration in setting the minimum price, but that the actual sale price did take the owner's interest into account and therefore there was substantial compliance with the statutes. A judgment quieting title in Plaintiffs was entered.

ISSUES

{8} Defendants begin their appellate argument with an allegation that there must be strict compliance with all the details of the tax statutes governing tax sales because these sales involve forfeiture of a property owner's interest and because of due process considerations. Defendants next allege that the public notice was faulty and that the Department did not consider their interest in setting the minimum price for the sale.

{9} Plaintiffs begin their appellate argument with an allegation that Defendants' specific arguments need not be reached because the trial court erred in not limiting Defendants to the four grounds listed in Section 7–38–70(D). Plaintiffs then argue, in the alternative, that substantial compliance is all that is necessary and that the trial court was correct in ruling that both the notice and the Department's consideration of the owner's interest in the property were adequate.

{10} The Department appears to agree with Defendants' position that challenges to tax sales are not limited to the grounds listed in Section 7–38–70(D), but it argues that there was substantial compliance with the tax statutes, particularly in regard to the Department's way of taking into account the interest of the owner. Defendants, in reply, urge that neither Plaintiffs nor the Department ought to be heard in claiming any error of the trial court because neither Plaintiffs nor the Department filed their own appeal.

{11} We discuss (1) the alleged improper cross-appeal, (2) whether challenges to tax sales are limited to the grounds listed in Section 7–38–70(D), (3) the notice, and (4) the consideration of the owner's interest. Our discussion of these issues makes it unnecessary to consider another issue raised by the parties, relating to waiver of any challenge to the tax sale.

## DISCUSSION

### Alleged Improper Cross–Appeal

{12} Defendants argue that Plaintiffs ought not to be able to contend that Defendants' challenge to the tax sale is limited by Section 7–38–70(D), and the Department ought not to be able to contend that it did take the owner's interest into account in setting the minimum sale price because neither Plaintiffs nor the Department filed any notice of cross-appeal or docketing statement in this case. However, Rule 12–201(C) NMRA 2003, entitled "Review without cross-appeal," provides that

> [a]n appellee may, without taking a cross-appeal or filing a docketing statement or statement of the issues, raise issues on appeal for the purpose of enabling the appellate court to affirm, or raise issues for determination only if the appellate court should reverse, in whole or in part, the judgment or order appealed from.

Under this rule, "[a]n appellee need not cross-appeal to raise an issue that would preserve the judgment below." *State ex rel. State Highway & Transp. Dep't v. City of Sunland Park*, 1999–NMCA–143, ¶ 11, 128 N.M. 371, 993 P.2d 85. We therefore hold that Plaintiffs' and the Department's contentions are properly before us.

### Grounds for Challenge to Tax Sale

{13} Both Plaintiffs and Defendants rely on the history of the statutes involving tax sales to support their respective positions concerning the grounds on which a former owner can challenge a tax sale and the strictness with which the Department must follow the statutes. As early as 1917, our Supreme Court emphasized the "curative feature" of the predecessor statute to Section 7–38–70(D), meaning that the legislature intended to clothe tax titles with a measure of certainty and thus strictly limited the grounds on which tax sales could be challenged. *Maxwell v. Page*, 23 N.M. 356, 365, 168 P. 492, 495 (1917). The curative feature is still relied upon, and we find language in our cases to the effect that, "[t]he statutory language, reflecting the legislative intent, makes the sale final, subject only to the challenges enumerated in Section 7–38–70(D). These chal-

lenges are, generally, the only permissible methods for attacking the validity of the sale and deed." *Cano v. Lovato*, 105 N.M. 522, 527, 734 P.2d 762, 767 (Ct.App.1986).

{14} Plaintiffs rely on this language to contend that summary judgment should have been granted to them without inquiry into any aspect of the public notice or the setting of the sale price. Plaintiffs point out that Defendants have not argued any of the grounds set forth in Section 7–38–70(D). However, Plaintiffs' argument ignores the entirety of Section 7–38–70 and the law establishing other grounds for challenging a tax sale.

{15} At the time *Maxwell* was decided, New Mexico law allowed owners a twoyear period in which to redeem their property. Defendants point to the 1973 amendments to the property tax laws, which eliminated the right of redemption. *See Cano*, 105 N.M. at 527, 734 P.2d at 767. Because the current law works as more of a forfeiture, Defendants contend that we must strictly construe the tax statutes against the state and liberally construe them in favor of the taxpayer to avoid the forfeiture. *S. Pac. Ry. Co. v. State*, 34 N.M. 479, 480–81, 284 P. 117, 117–18 (1930). However, the same case indicates that tax statutes also ought to be construed liberally in favor of the state to carry out the intention of the legislature to collect needed tax revenues. *Id.* at 481, 284 P. at 117–18.

{16} Thus, we do not adopt either party's entire position on the matter of what can be challenged and how strictly to hold the Department to the statutes. Instead, we think that the trial court was correct in giving effect to Section 7–38–70(B) and inquiring into whether there was substantial compliance with the statutes. All parts of a statute must be read together to give meaning to the entire statute. *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599. Even as our cases indicated that a challenge was strictly limited to the grounds set forth in Section 7–38–70(D), they also recognized that there could be such a degree of noncompliance with other required procedures that a tax sale could be voided. *See Cano*, 105 N.M. at 528, 734 P.2d at 768 (agreeing that

jurisdictional defects can provide additional grounds for challenge).

{17} Section 7–38–70(B) requires the property to be sold "substantially in accordance with the Property Tax Code." What this means, we think, is that a trial court is empowered to review the sale procedures, but not for the purpose of requiring letter-perfect compliance with each requirement of the statutes. Instead, except as regards the specific items mentioned in Section 7–38–70(D), the trial court may, as the court below did, look to see whether the Department made a good faith effort to sell the property in accordance with the statutes and whether the general purposes of the statutes were served. Contrary to Defendants' argument that Sections 7–38–66 and –67 do not contain any language concerning substantial compliance and therefore there must be strict compliance with those sections, we believe that a reading of the entirety of Section 7–38–70, together with the cases, indicates that the substantial compliance language of Section 7–38–70(B) must overlay all the other statutes that comprise the Property Tax Code.

{18} In allowing challenges to tax sales beyond the four grounds set forth in Section 7–38–70(D), we do not mean to retreat from the concerns expressed in *Wine v. Neal*, 100 N.M. 431, 671 P.2d 1142 (1983), for example. There, the Supreme Court reiterated the need to "clothe tax titles with a measure of certainty and security," and commented on the curative policy, explaining that "[t]he very purpose of the curative statute is to stabilize and render tax sales efficient, to collect delinquent taxes and confer on the purchasers something of substance." *Id.* at 433, 434, 671 P.2d at 1144, 1145 (internal quotation marks and citations omitted). Thus, we now turn to an examination of Defendants' specific challenges to the tax sale at issue, and in so doing, we review to see if the trial court was correct in its determination that there was sufficient compliance with the statutes to uphold the sale.

{19} We note that the notice issue was decided on summary judgment while the minimum price issue was decided after trial. While Defendants claim to challenge several of the trial court's factual findings, none of the relevant facts relating to the issues we address are in dispute. Therefore, we review the issues de novo, as we did with the statutory interpretation issue discussed above. *See Gallegos v. Espinoza*, 2002–NMCA–011, ¶ 6, 131 N.M. 487, 39 P.3d 704 (stating that appellate court reviews grant of summary judgment de novo); *Gordon v. Sandoval County Assessor*, 2001–NMCA–044, ¶ 12, 130 N.M. 573, 28 P.3d 1114 (indicating that de novo review is appropriate when operative facts are not in dispute and for questions of statutory construction).

### The Notice

{20} Defendants identify five defects in the public notice of sale that they contend void the sale. They are:

(1) The time specified for the sale is "9:00 AM/PM." Defendants contend that potential purchasers would not know whether the sale was to begin at 9:00 in the morning or 9:00 at night.

(2) The location specified for the sale is the "Santa Fe County Courthouse." Defendants contend that potential purchasers would not know whether the sale was to take place at the old county courthouse which is currently used for Santa Fe County Administration or the new First Judicial District courthouse which is currently named the Steve Herrera Judicial Complex.

(3) The owner is listed as "Resolute Land & Cattle Co." Defendants contend that failing to identify them as owners is "unclear, confusing and ambiguous."

(4) The description of the property is "In Santa Fe on Calle Cabito." Defendants contend that this description erroneously implies that the property is in the City of Santa Fe.

(5) The description does not comply with NMSA 1978, § 14–11–10.1 (1987), which requires all published legal notices to "contain a simple description of the real property in commonly used terms sufficient to indicate its location in relation to roads, towns, streets, neighborhoods, or other fixed objects."

{21} Section 7–38–67(B) states, with regard to the content of the published notice,

"[t]he notice shall state the time and place of the sale and shall include a description of the real property sufficient to permit its identification and location by potential purchasers." Bearing in mind the purpose of the published notice and the admonition that only substantial compliance is necessary lest the curative features of the statutes be nullified, we agree with the trial court that no reasonable person would understand that the sale would begin at 9:00 at night; that the location of the property with reference to its legal description, subdivision, and street name was sufficient; and that the location of the sale at the Santa Fe County Courthouse was accurate, and providing the telephone number of the County Treasurer as well as four numbers for the Property Tax Division would allow any potential purchaser to get more information in the unlikely event of any confusion.

{22} Defendants, at various places in their briefs, appear to incorporate a constitutional due process argument into their contentions about the defects in the notice. We are not sure that we fully understand Defendants' arguments, but to the extent that we do, we find them to be without merit.

{23} First, we note that Defendants do not challenge that the notice requirements set forth in the statute were met. Section 7–38–70(D)(2) requires that the Property Tax Division mail a notice and receive a return receipt. The notice was mailed, and Defendant Mr. Mitchell admitted that he signed the return receipt, which the Department subsequently received. We acknowledge the long-standing rule that a violation of due process can occur, which will void a tax sale, when, in spite of statutory compliance, a government can easily do more to actually notify the owner of the impending tax sale. See Patrick v. Rice, 112 N.M. 285, 288–90, 814 P.2d 463, 466–68 (Ct.App.1991) (holding that a tax sale would be invalidated when the Department mailed the notice to an incorrect address that it had in its files and received a return stating that the address was incorrect, thus satisfying the statute, but when the property owner's correct address was ascertainable from the files and thus due process was violated). Although Defendants rely on this rule, we do not believe that it helps them because, in this case, they actually received the notice.

{24} Defendants appear to contend that their actual receipt of the notice is irrelevant because they did not read it and thus had no actual knowledge that the tax sale would take place. Defendants cite no authority for the proposition that their due process rights would be violated when they are given actual, in-hand notice of something that they do not read. See In re Adoption of Doe, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (holding that an appellate court can assume that no authority supports a proposition when a party cites no supporting authority). We reject any suggestion that Defendants' due process rights were violated when the cause of their lack of information is solely their fault.

{25} Defendants also appear to contend that the various defects in the published notice prejudiced them and also violated the due process rights of potential purchasers. Because Defendants, as a matter of law, had actual notice of the sale via the letter they received, and because there was no testimony that they looked at the published notice, but did not recognize their property due to the defects, we cannot say that their due process rights were violated by any defects in the notice. See State v. Jacobs, 2000–NMSC–026, ¶ 46, 129 N.M. 448, 10 P.3d 127 (stating that merely asserting prejudice does not establish prejudice). Finally, we know of no authority that would give due process rights to potential purchasers and, even if such rights existed, they would be for the potential purchasers, and not Defendants, to raise. See Gunaji v. Macias, 2001–NMSC–028, ¶ 20, 130 N.M. 734, 31 P.3d 1008 (stating the general rule that people complaining of violations of constitutional rights must allege violations of their own rights, not the rights of others).

### The Consideration of the Owner's Interest

{26} The statute requires the Department to "consider" the value of the owner's interest when setting the minimum price for the property. Section 7–38–67(E). Although the trial court found that the Department did not "consider" the value of the owner's interest when setting the minimum price, it found that the circumstances of the sale did take the owner's interest sufficiently into account to uphold the sale. We understand the trial

court to have ruled that the Department did not add an amount to the taxes owed that would represent the owner's interest, and that is what the trial court meant by its finding that the Department did not consider the value of the owner's interest.

{27} The Department argues from the dictionary definition of "consider" that all that is required is that the Department reflect on or think about the owner's interest with a degree of care or caution. According to the Department, each sale does not necessarily have to have a minimum price that consists of an amount for the taxes owed and an amount to compensate the owner. Although Defendants dismiss the Department's use of dictionary definitions, we have used the same definition in interpreting another statute that used the word "consider." *See State v. Doe*, 100 N.M. 649, 655, 674 P.2d 1109, 1115 (1983) (Sosa, J., dissenting).

{28} We agree with the Department that each minimum sale price does not necessarily have to have a component amount representing what the owner should get for the property, and we agree with Plaintiffs that the evidence supported the trial court's conclusion that there was substantial compliance with the statute under the facts of this case. The evidence was that, in the Department's experience, the owner's interest was best accounted for by interesting as many buyers as possible in the sale by setting a low minimum sale price on the property. The Department's experience was borne out in this case inasmuch as the testimony was that there was competitive bidding that raised the price to eight times the minimum bid. Although Defendants paid in excess of $100,000 for the property and the appraisals exceeded $120,000, the fact of the matter is that all a buyer at a tax sale gets is a quitclaim deed and an opportunity to expend money for a quiet title suit and any necessary appeals. Under these circumstances, we cannot say that the Department's thoughts on the owner's interest do not represent a sufficient degree of care and caution.

{29} Moreover, to the extent that Defendants argue that the minimum sale price must include a "commercially fair" element to protect the property owner and if the property is not sold at that price, only then may the price be reduced, we believe that Defendants read too much into the statute. If the legislature had wanted to mandate an element of the sale price to be a certain level, whether the full appraised value or the taxable value or some percentage of either, it could have easily so provided. Instead, the legislature's choice of the word "consider" indicates to us that there are no such strict requirements. *High Ridge Hinkle Joint Venture*, 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599 ("The court will not read into a statute . . . language which is not there[.]") (internal quotation marks omitted).

{30} The structure of the applicable sections, as well as the legislative intent expressed in other parts of the statute, support this view. NMSA 1978, § 7–38–65(A) (2001) indicates that the purpose of the Property Tax Code is to permit "[t]he department [to] collect delinquent taxes on real property by selling the real property on which the taxes have become delinquent." Section 7–38–67(E) requires the Department to "consider" both the owner's interest and the amount of delinquent taxes, penalties, and costs, but then the Department is directed to set the minimum price as not less than the total of the delinquent taxes, penalties, and costs. Thus, the legislature does not appear to have required any definite amount representing the owner's interest as part of the minimum sale price.

{31} Therefore, as long as the Department does take into consideration the value of the owner's interest, which the testimony indicated that it did in this case, we believe that that is sufficient. Again, bearing in mind that all that is required is substantial compliance so that the curative policies of the statutes are effectuated, we agree with the trial court that the sale here was sufficiently in compliance with the statutes to uphold.

## CONCLUSION

{32} The decision of the trial court, quieting title in Plaintiffs, is affirmed.

{33} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and CELIA FOY CASTILLO, Judges.