**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: _____**

**Filing Date: March 31, 2014**

**Docket No. 32,680**

**FRANCISCO VALENZUELA and**
**RACHEL VALENZUELA,**

        **Plaintiffs-Appellees,**

**v.**

**ALLAN D. SNYDER and SHERRY L. SNYDER,**

        **Defendants-Appellants,**

**and**

**STATE OF NEW MEXICO, TAXATION**
**AND REVENUE DEPARTMENT, PROPERTY**
**TAX DIVISION,**

        **Defendant.**

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Drew D. Tatum, District Judge**

Eric D. Dixon
Portales, NM

for Appellees

Allan and Sherry Snyder
Greeley, CO

Pro Se Appellants

**OPINION**

**FRY, Judge.**

1

**{1}** Plaintiffs Francisco and Rachel Valenzuela owed delinquent taxes on property in Portales, New Mexico, which the New Mexico Taxation and Revenue Department (the Department) sold at auction to Defendants Allan and Sherry Snyder. It is undisputed that the minimum bid at the sale was established by the Department as $215, and the Snyders, who were the only bidders at the auction, paid that amount. The Department's Property Tax Division (the Division) issued deeds on the property to the Snyders, which the Snyders recorded.

**{2}** The Valenzuelas filed suit seeking an order setting aside the tax sale. They alleged that because the purchase price was so grossly disproportionate to the property's fair market value—alleged to be at least $25,000—it would be inequitable and unconscionable to let the tax sale stand. The district court granted them summary judgment on the ground that the Snyders failed to respond to the motion for summary judgment and were deemed to have admitted the facts alleged by the Valenzuelas. Because our statutes and case law establish that an inadequate purchase price at a tax sale is not a basis for voiding the sale, we reverse.

**BACKGROUND**

**{3}** The Valenzuelas initially sued only the Department seeking an order setting aside the tax sale. They later amended their complaint to add the Snyders as Defendants, and the case proceeded against only the Snyders.

**{4}** The Valenzuelas filed a motion for summary judgment in which they alleged several material facts regarding the value of the property and the disproportionality of the purchase price. They also alleged, as material facts, the legal conclusion that it would be unconscionable and inequitable to let the tax sale stand under the circumstances.

**{5}** The Snyders, acting pro se, did not directly respond to the motion for summary judgment. Instead, they filed a motion to stay the proceedings against them until the case against the Department was resolved. In this motion, the Snyders stated that they "den[ied] the whole" of the Valenzuelas' motion for summary judgment. They did not comply with the provisions of Rule 1-056 NMRA that require a memorandum opposing a motion for summary judgment to specifically note all disputed facts with supporting citations to the record. *See* Rule 1-056(D)(2).

**{6}** Due to the Snyders' failure to properly respond to the motion for summary judgment, the district court deemed admitted all of the material facts alleged in the Valenzuelas' motion, including:

• The property's fair market value was at least $25,000.

• The Snyders purchased the property at a tax sale for $215.

• The price the Snyders paid was "grossly disproportionate to [the property's] fair

2

market value."

- "It is unconscionable to allow the tax sale in which [the Snyders] purchased the property to stand."

The court concluded that "[t]he tax sale in which [the Snyders] purchased the property is hereby deemed null and void." This appeal followed.

**DISCUSSION**

**{7}** When this Court calendared this case, we instructed the parties to brief, in addition to any other issues they were inclined to raise, the following questions: (1) whether a claim seeking to invalidate a tax sale due to inadequacy of price must be directed at the governmental entity that sold the property, or whether it may be directed solely at the third-party purchasers of the property; and (2) whether New Mexico law supports the invalidation of a tax sale due to inadequacy of price. Because these questions were briefed at our direction, we decline to address the Valenzuelas' arguments that the Snyders failed to preserve these questions in the district court. Indeed, the second question is the legal issue on which the district court's summary judgment stands or falls. We address each question in turn.

**The Valenzuelas Could Properly Sue the Snyders for the Relief Requested**

**{8}** We readily dispose of the first question. The Valenzuelas correctly note that NMSA 1978, Section 44-6-4 (1975) of our Declaratory Judgment Act (the Act), NMSA 1978, §§ 44-6-1 to -15 (1975), provides that "[a]ny person interested under a deed . . . or whose rights . . . are affected by a statute . . . may have determined any question of construction or validity arising under the instrument [or] statute . . . and obtain a declaration of rights, status[,] or other legal relations thereunder." Section 44-6-4. The Valenzuelas seek in this case to have their rights under the Property Tax Code declared, so they appropriately asserted their claim under Section 44-6-4. As for the proper defendant(s) in their suit, Section 44-6-12 of the Act provides that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration." As purchasers of the property previously owned by the Valenzuelas, the Snyders clearly fall within this category and, therefore, the suit against them was permissible.

**Inadequacy of the Purchase Price is Not a Valid Basis for Voiding a Tax Sale**

**{9}** With respect to the second question—whether New Mexico law permits setting aside a tax sale due to the inadequacy of the purchase price—we review an order granting summary judgment de novo. *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.*

3

**{10}** While the Snyders' response to the Valenzuelas' motion for summary judgment did not comply with the requirements of Rule 1-056, this did not automatically entitle the Valenzuelas to summary judgment. *See Junge v. John D. Morgan Constr. Co.*, 1994-NMCA-106, ¶ 12, 118 N.M. 457, 882 P.2d 48 (explaining that a movant is "not automatically entitled to summary judgment on the basis of an allegedly improper response"). The Valenzuelas had the burden "to show an absence of a genuine issue of fact, and that [they were] entitled as a matter of law to judgment in [their] favor." *Brown v. Taylor*, 1995-NMSC-050, ¶ 8, 120 N.M. 302, 901 P.2d 720.

**{11}** Given the Snyders' non-compliant response to the Valenzuelas' motion for summary judgment, it was appropriate under Rule 1-056(E) for the district court to deem admitted the allegations of *fact* stated in the motion. *See id.* ("[A]n adverse party may not rest upon the mere allegations or denials of his [or her] pleading, but his [or her] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he [or she] does not so respond, summary judgment, if appropriate, shall be entered against him [or her]."). However, the same does not hold true for conclusions of law that are presented as allegations of fact. *See Vives v. Verzino*, 2009-NMCA-083, ¶ 10, 146 N.M. 673, 213 P.3d 823 (explaining that conclusions of law are not deemed admitted by the opponent's failure to respond). Of the material "facts" alleged in the Valenzuelas' motion and adopted by the district court, one is clearly a conclusion of law—the statement that "[i]t is unconscionable to allow the tax sale in which [the Snyders] purchased the property to stand." This is the legal question we must answer in light of the facts that were deemed admitted: that the Snyders purchased property worth at least $25,000 for $215 at the tax sale and that this purchase price was "grossly disproportionate" to the property's fair market value.[1]

**{12}** We conclude that inadequacy of the purchase price or gross disproportionality between the purchase price and the property's value are not grounds for setting aside a tax sale. New Mexico's Property Tax Code (the Code) and our case law make this clear.

**{13}** We begin with the Code. NMSA 1978, Section 7-38-48 (2003) provides that, with certain exceptions not applicable to this case, "taxes on real property are a lien against the real property from January 1 of the tax year for which the taxes are imposed. . . . The lien continues until the taxes and any penalty and interest are paid." In this case, it appears that at the time of the tax sale, the Valenzuelas owed delinquent taxes for the years 2008, 2009, 2010, and possibly 2011. They do not claim in this appeal that they did not receive notice that these taxes were due and delinquent or that they were not provided notice of the tax sale.

**{14}** The Code states, "If a lien exists . . . , the [D]epartment may collect delinquent taxes

---

[1]The "fact" of gross disproportionality is arguably a conclusion of law, given the case law from Missouri that we discuss below. However, for purposes of this appeal only, we treat it as an undisputed fact.

on real property by selling the real property on which the taxes have become delinquent." NMSA 1978, § 7-38-65(A) (2003, amended 2013). The Code requires the sale to be at public auction, with a minimum purchase price determined by the Department. NMSA 1978, § 7-38-67(C), (E) (2005). "In determining the minimum price, the [D]epartment shall consider the value of the property owner's interest in the real property, the amount of all delinquent taxes, penalties and interest for which it is being sold and the costs. The minimum price shall not be less than the total of all delinquent taxes, penalties, interest[,] and costs." Section 7-38-67(E). Of note here is the direction to the Department to "consider the value of the property owner's interest in the real property," a phrase that has been interpreted by our case law, as we discuss below. *Id.*

**{15}** Once a tax sale has taken place, if the sale was "substantially in accordance with the . . . Code . . ., the deed conveys all of the former property owner's interest in the real property as of the date the state's lien for real property taxes arose . . ., subject only to perfected interests in the real property existing before the date the property tax lien arose." NMSA 1978, § 7-38-70(B) (1982). Here, the Division issued two such deeds to the Snyders. These deeds were, in effect, quitclaim deeds.

**{16}** "In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 13, 121 N.M. 764, 918 P.2d 350. In addition, "we should read the entire statute as a whole so that each provision may be considered in relation to every other part." *Baker v. Hedstrom*, 2013-NMSC-043, ¶ 15, 309 P.3d 1047 (internal quotation marks and citation omitted).

**{17}** We first note that there is nothing in the Code expressly requiring that the price paid at a tax sale approximate the fair market value of the property. As far as price is concerned, the Code requires only that "[t]he minimum price shall not be less than the total of all delinquent taxes, penalties, interest[,] and costs." Section 7-38-67(E). While the Code requires the Department to "consider the value of the property owner's interest," *id.*, in determining the minimum sale price, this Court has said that this consideration can be established "by interesting as many buyers as possible in the sale by setting a low minimum sale price on the property." *Cochrell v. Mitchell*, 2003-NMCA-094, ¶ 28, 134 N.M. 180, 75 P.3d 396. In *Cochrell*, the minimum bid was set at $4000 on property worth between $100,000 and $144,000, where the total taxes, penalties, and interest totaled $3914.72. *Id.* ¶¶ 3, 5, 6. In the present case, the minimum sale price was low—$215 on property worth $25,000.

**{18}** *Cochrell* also established that all that is required of a tax sale is substantial compliance with the Code. *Id.* ¶ 16. This is in keeping with the Code's purpose to permit the collection of delinquent taxes by selling the property at issue. *Id.* ¶ 30. "[T]he [L]egislature does not appear to have required any definite amount representing the owner's interest as part of the minimum sale price." *Id.* Had the Legislature "wanted to mandate an element of the sale price to be a certain level, whether the full appraised value or the taxable

5

value or some percentage of either, it could have easily so provided." *Id.* ¶ 29.

**{19}** Earlier New Mexico cases, interpreting a former version of the Code, have held that "[t]ax sale deeds will not be invalidated because it might appear that the property so sold for delinquent taxes was not adequately valued for assessment purposes." *Taylor v. Shaw*, 1944-NMSC-046, ¶ 10, 48 N.M. 395, 151 P.2d 743; *see Lawson v. McKinney*, 1950-NMSC-022, ¶¶ 2-3, 12, 54 N.M. 179, 217 P.2d 258 (reversing judgment in favor of former owner of land sold at tax sale where judgment was based on the trial court's adoption of the principle that "where the consideration in a tax sale is grossly inadequate as compared with the actual value of the property the deed should be held invalid").

**{20}** In *Taylor*, the former owner of the property sought to invalidate the tax sale in part because improvements he made to the property were not included in the assessment of its value. 1944-NMSC-046, ¶ 10. In rejecting this argument, our Supreme Court stated that permitting a property owner to attack a tax sale on this basis would defeat the purpose of the law of tax sales, which is "to render these tax sales efficient to collect delinquent taxes and confer upon the purchaser a substance and not a shadow." *Id.* ¶ 16 (internal quotation marks and citation omitted). Because the former owner failed to pay his property taxes and failed to complain about the inadequacy of the assessment, the Court would not permit him to complain about an inadequate valuation. *Id.* ¶ 18.

**{21}** Justice Bickley wrote a special concurring opinion in *Taylor*, in which he commended a principle adopted in Missouri "that in tax sales the consideration paid may be so grossly inadequate as of itself to amount to 'fraud,' requiring that sale and tax deed be set aside." *Id.* ¶ 20 (Bickley, J., concurring specially). This is the same principle that the Valenzuelas urge us to adopt in the present case. We decline to establish a similar rule in New Mexico for two reasons. First, our Supreme Court expressly rejected the Missouri rule in *Lawson*, 1950-NMSC-022, ¶¶ 3, 7 (declining to follow Justice Bickley's recommendation of the Missouri rule). Second, the applicable statute in Missouri expressly requires tax sales to be confirmed by a court and that the court receive evidence of the property's value and "determine whether an adequate consideration has been paid" for the property sold. Mo. Ann. Stat. § 141.580(1) (West 2012). The Code in New Mexico has no such requirement.

**{22}** The Valenzuelas also rely on *Armstrong v. Csurilla*, which applied a rule similar to the "shock the conscience" principle established in Missouri. 1991-NMSC-081, ¶¶ 39-40, 112 N.M. 579, 817 P.2d 1221. *Armstrong* is distinguishable, however, because it involved foreclosure on a judgment lien, not a tax sale. *Id.* ¶¶ 2, 6. Judgment liens and mortgages may be foreclosed upon by way of a judicial proceeding. *See* NMSA 1978, § 39-4-13 (1933) (stating that anyone holding a judgment lien on real estate "may subject said real estate to the payment of his [or her] judgment by a foreclosure suit in any court of competent jurisdiction, such suit to be instituted and prosecuted in the same manner as ordinary suits for the foreclosure of mortgages"). Such foreclosure proceedings are subject to their own requirements and exemptions, including the property owner's right of redemption. *Id.* (stating that a foreclosure of a judgment lien is "subject to the same rights of redemption as

in sales held under mortgage foreclosure decrees"). In contrast, tax sales are not accomplished through foreclosure in a court proceeding but may be conducted by the Department itself, without court participation, and there is no right of redemption for the taxpayer in a tax sale. *See Cochrell*, 2003-NMCA-094, ¶ 15 (explaining that the 1973 amendments to the Code "eliminated the right of redemption"). Thus, a judicial sale and a tax sale are two different creatures, and the principles applicable to one do not apply to the other.

**{23}** While it may seem harsh to disregard a large discrepancy between the purchase price in a tax sale and the property's value, there are at least three sensible reasons for doing so. First, it seems less important to protect a property owner's interest in fair market value where the owner has not bothered to pay taxes on the property, despite having had at least three years in which to contemplate doing so before the tax sale. *See* § 7-38-65(A) (stating that a tax sale may not occur until "after the expiration of three years from the first date shown on the tax delinquency list on which the taxes became delinquent"); *see also Hickey v. Peck*, 23 A.2d 711, 714-15 (Md. App. 1942) (explaining that "where the owner of the property has not thought it worth while to pay taxes on the property, courts will not look too closely at the amount of the purchase price in the absence of any other circumstances"). Second, "the purchaser [at the tax sale] buys, knowing the uncertainty of [the] title which is reflected in [the purchaser's] offer." *Id.* at 714. In this case, the Snyders, like all purchasers at a tax sale, received quitclaim deeds, and this circumstance may compel the purchaser to undertake the cost and time expenditures of a quiet title suit. Allowing property to be sold for the amount of delinquent taxes, penalties, interest, and costs encourages purchasers and resolves a delinquency owed the Department. Third, precluding an after-sale challenge on the basis of an inadequate price "clothe[s] tax titles with a measure of certainty and security." *Cochrell*, 2003-NMCA-094, ¶ 18 (internal quotation marks and citation omitted); *see Wine v. Neal*, 1983-NMSC-087, ¶ 17, 100 N.M. 431, 671 P.2d 1142 (stating that "[t]he very purpose of the curative statute is to stabilize and render tax sales efficient, to collect delinquent taxes and confer on the purchasers something of substance" (internal quotation marks and citation omitted)).

**{24}** We are not persuaded by the out-of-state cases relied on by the Valenzuelas. Those cases involved the taxpayer's right of redemption following a tax sale. *C.F.P. Prop., Inc. v. Roleh, Inc.*, 2009-CA-00391-COA (¶¶ 9, 11-12) (Miss. 56 So. 3d 575, 576-77, Ct. App. 2010) (affirming summary judgment in favor of taxpayer and against purchaser at a tax sale because there was no affidavit of diligent search and inquiry as to the taxpayer's whereabouts, which was a prerequisite for giving the taxpayer notice of the right of redemption); *Priest v. Mareane*, 846 N.Y.S.2d 518, 519-20 (N.Y. App. Div. 2007) (mem.) (affirming dismissal of petition for delivery of a tax sale deed because the taxpayer had redeemed the property by paying the back taxes and other charges). In New Mexico, there is no right of redemption.

**{25}** In summary, the district court erroneously granted summary judgment to the Valenzuelas. As a matter of law, the purchase price paid by the Snyders, while

disproportionate to the market value of the property, cannot be deemed unconscionable and cannot serve as a basis for setting aside the deeds issued to the Snyders by the Division.

**{26}** Given our disposition, we need not address the other issues raised by the Snyders.

**CONCLUSION**

**{27}** For the foregoing reason, we reverse the summary judgment in favor of the Valenzuelas and remand to the district court with instructions to enter judgment in favor of the Snyders.

**{28}** **IT IS SO ORDERED.**

_____

**CYNTHIA A. FRY, Judge**

**I CONCUR:**

_____

**M. MONICA ZAMORA, Judge**

**JONATHAN B. SUTIN, Judge (specially concurring).**

**SUTIN, Judge (specially concurring).**

**{29}** I fully concur in Judge Fry's Opinion. I write separately just to note a few matters. First, I cannot fault the district court for granting summary judgment when the Snyders, acting pro se, intentionally, if not flagrantly, disregarded important rules of procedure related to summary judgment proceedings and discovery. As indicated in Judge Fry's Opinion, however, in scrutinizing judgments we need not overlook incorrect application of law, particularly when to do so can result in bad precedent.

**{30}** Second, although Plaintiffs' counsel attempted to make a case that the Valenzuelas did not understand how the tax delinquency system worked, it appears that the Valenzuelas received notice of delinquent taxes, failed to prove a valid reason for disregarding the delinquency, and at no time before or at the sale sought to satisfy the delinquency that amounted to no more than $215.

**{31}** Third, although I concurred in Judge Pickard's opinion in *Cochrell*, 2003-NMCA-094, I think that the mandate in Section 7-38-67(E), that the Department "consider the value of the owner's interest in the real property" in determining the minimum price for the property at the sale, requires more than indicated in *Cochrell*. I tend to doubt that the Legislature meant that the only care and caution in the Department's thoughts in that regard need only go so far as to have some hope or expectation that a competitive bidding process

8

will occur and might produce an ultimate purchase price significantly higher than the minimum price set to cover the delinquency. I think that the "consider the value of the owner's interest" phrase is ambiguous and is in need of greater clarification, hopefully through legislation.

**{32}** Fourth, it may be time for the Legislature to take another look at the tax sale provisions to explore whether some balanced approach can exist in tax sales that satisfies the policies of discouraging delinquencies, encouraging competitive bidding, and taking into consideration a purchaser's title risks and any commensurate costs when receiving only a quitclaim deed, yet guarding against homeowner unconscionable loss and purchaser windfall.

_____
**JONATHAN B. SUTIN, Judge**