This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41107**

**BOARD OF EDUCATION FOR THE
GALLUP-MCKINLEY COUNTY SCHOOLS,
et al.,**

Plaintiffs/Petitioners-Appellants,

v.

**KURT STEINHAUS, Ed. D., in his official
capacity as Secretary of the NEW MEXICO
PUBLIC EDUCATION DEPARTMENT; and
NEW MEXICO PUBLIC EDUCATION
DEPARTMENT,**

Defendants/Respondents-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Matthew J. Wilson, District Court Judge**

Himes, Petrarca & Fester, CHTD
Andrew M. Sanchez
Albuquerque, NM

for Appellants

Raúl Torrez, Attorney General
Santa Fe, NM
Mark W. Allen, Assistant Attorney General
Albuquerque, NM

for Appellees

### MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}**     Plaintiffs, a charter school governing board and numerous public school boards from across New Mexico, appeal a district court order granting summary judgment in favor of Defendants Kurt Steinhaus, as the Secretary of the Public Education Department, and the New Mexico Public Education Department (PED) and denying Plaintiffs' motion for partial summary judgment. On appeal, Plaintiffs argue that Defendants exceeded the scope of their lawful authority under the Public School Code, NMSA 1978, §§ 22-1-1 to -33-5 (except Article 5A) (1967, as amended through 2025) and the New Mexico Constitution, art. XII, § 6, and additionally contest several actions taken by Defendants in response to the COVID-19 pandemic, including mandating the delivery of free school-prepared meals to students during periods of remote learning, recommending the continued payment of school employee benefits and salaries during periods of school closures, and restricting in-person learning. For the following reasons, we affirm the district court.

## BACKGROUND

**{2}**     We briefly discuss the procedural history of this case and the arguments presented below as are relevant to the issues raised on appeal.

**{3}**     This case arises from guidance, regulations, and other actions taken by PED in response to the COVID-19 pandemic. Plaintiffs filed their third amended complaint in January 2021. In that complaint, Plaintiffs identified a number of actions that they contended were in violation of PED's authority, and sought a declaration that "[t]he PED Secretary may not exercise legal authority not otherwise granted to [them] under [s]tate statute or under the [s]tate's constitution, and such exercise of authority would be ultra-vires, as a matter of law, rendering the PED's directives, guidance documents and emergency regulations void and unenforceable." More specifically, Plaintiffs sought a declaration stating that PED's guidance and regulations promulgated during the COVID-19 pandemic are void and unenforceable because (1) "[t]he PED Secretary may not control or manage the local personnel systems of local school districts or public charter schools or the terms and conditions of the local employment of school employees"; (2) "[i]n instances of shared statutory authority, the PED may not act unilaterally and outside of a collaborative agreement with the local school boards and/or local superintendents on any matter on the management and control of local school districts"; and (3) "PED may not act to deprive any school-aged student residing in the [s]tate of a public education." Plaintiffs also sought an injunction enjoining PED from acting contrary to such a declaration. Plaintiffs additionally alleged that Defendants unlawfully retaliated against them for filing their lawsuit by initiating inspections of multiple public school districts and one charter school who are parties to this appeal for violations of COVID-19 related regulations. Plaintiffs sought injunctive and declaratory relief to remedy this alleged retaliation.

**{4}**     Following much litigation, Defendants filed a motion for summary judgment in December 2022. Defendants asserted that (1) PED's actions were within its authority; (2) PED's actions comply with the State Rules Act's requirements; (3) PED's actions did not violate the constitutional right to a free and appropriate education; (4) PED's

COVID-19 testing requirements for school personnel did not violate employment laws; (5) PED's directives to pay employees' salaries and benefits while schools were closed and delivering school-prepared meals to nonstudents do not violate the Antidonation Clause; (6) accommodating employees' health needs did not violate the federal Americans with Disabilities Act or the New Mexico Human Rights Act; (7) PED did not violate the CARES Act; and (8) Defendants' actions did not constitute retaliation. In response, Plaintiffs argued that (1) Defendants' rulemaking was illegal; (2) Defendants infringed on the constitutional right to a public education as defined by the pending district court case *Martinez v. Skandera*, D-101-CV-2014-00793 (1st Jud. Dist. Ct., filed Apr. 1, 2014) (consolidated with *Yazzie v. State*, D-101-CV-2014-02224 (1st Jud. Dist. Ct., filed Oct. 7, 2014)) (hereinafter *Yazzie-Martinez*); (3) Defendants have no authority over school personnel and could not mandate COVID-19 testing; (4) Defendants violated the Antidonation Clause by directing the continued payment of employee salaries and benefits and directing the delivery of school-prepared meals; and (5) there is sufficient evidence to create a dispute of material fact regarding retaliation.

**{5}** Plaintiffs also filed a motion for partial summary judgment, arguing in relevant part that local public school boards have exclusive control over personnel matters, and thus PED lacked the authority to mandate workplace accommodations for public school employees and COVID-19 testing of public school employees. Plaintiffs also argued that these programs violated state and federal employment laws. Additionally, Plaintiffs sought partial summary judgment on whether Defendants violated the Antidonation Clause by directing Plaintiffs to provide free school-prepared meals to nonstudents. As in their motion for summary judgment, Defendants disputed these contentions. Following a hearing, the district court granted Defendants' motion for summary judgment and denied Plaintiffs' motion for partial summary judgment. Plaintiffs appeal.

**DISCUSSION**

**{6}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "We review these legal questions de novo." *Id.* "The movant need only make a prima facie showing that [they are] entitled to summary judgment." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted). "Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* (internal quotation marks and citation omitted). "On appeal from the grant of summary judgment, we ordinarily review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "However, if no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment." *Id.*

**{7}** On appeal, Plaintiffs argue that the district court erred in granting Defendant's motion for summary judgment and denying Plaintiffs' motion for partial summary judgment because (1) PED exceeded its authority and usurped authority delegated to local public school boards by acting unilaterally, without the support and agreement of local school boards; (2) PED violated the Antidonation Clause of the New Mexico Constitution, art. IX, § 14, by directing the continued payment of school employees' benefits and salaries during school closures and directing that school-prepared lunches be delivered to nonstudents; (3) PED's restrictions on in-person learning violated students' right to a free and sufficient public education under Article XII, Section 1 of the New Mexico Constitution; **(**4) PED had no authority to require COVID-19 testing for school employees or to permit school employees to work remotely, and such directives violated state and federal employment law; and (5) PED's actions in initiating investigations against several public school districts and a charter school constituted retaliation.[1] Defendants assert that many, if not all, of Plaintiffs' arguments on appeal are moot. We first consider whether Plaintiffs' assertions of error are moot before turning to the remaining contentions.

## I.     Mootness

**{8}** "As a general rule, [courts] do[] not decide moot cases." *Republican Party of N.M. v. N.M. Tax'n & Revenue Dep't*, 2012-NMSC-026, ¶ 10, 283 P.3d 853 (internal quotation marks and citation omitted). "When no actual controversy exists for which a ruling by the court will grant relief, an appeal is moot and ordinarily should be dismissed." *Republican Party of N.M.*, 2012-NMSC-026, ¶ 10. This Court may, in its discretion, address moot issues in "cases which present issues of substantial public interest, and cases which are capable of repetition yet evade review." *Id.* (internal quotation marks and citation omitted). "An issue is capable of repetition yet evading review if the issue is likely to arise in a future lawsuit, regardless of the identity of the parties." *Id.* (internal quotation marks and citation omitted).

**{9}** Briefly, we address Plaintiffs' argument that Defendants were required to cross-appeal the district court's order to argue that Plaintiffs' arguments are moot on appeal. Specifically, Plaintiffs argue that, because the district court rejected Defendants' argument that the issues in this case were moot below, Defendants must appeal that district court order and argue that it was made in error. However, Rule 12-201(C) NMRA

---

1Plaintiffs argue that the district court wasted significant time by granting summary judgment on this claim after it previously denied Defendants' two motions to dismiss for failure to state a claim. However, in denying Defendants' motions to dismiss, the district court found that Plaintiffs' complaint and petition alleged facts that, if proven, would entitle Plaintiffs to relief. *See Delfino v. Griffo*, 2011-NMSC-015, ¶ 12, 150 N.M. 97, 257 P.3d 917 ("Dismissal on [Rule 1-0]12(B)(6) grounds is appropriate only if the plaintiff is not entitled to recover under any theory of the facts alleged in their complaint." (alteration, internal quotation marks, and citation omitted)). By contrast, in granting Defendants' motion for summary judgment, the district court decided the issues of law raised in the motion in Defendants' favor. "It must be borne in mind that a summary judgment amounts to more than a motion to dismiss for failure to state a claim upon which relief may be granted; it is by its own terms a judgment." *Rekart v. Safeway Stores, Inc.*, 1970-NMCA-020, ¶ 13, 81 N.M. 491, 468 P.2d 892 (internal quotation marks and citation omitted). Thus, we disagree that the district court's denials of the motions to dismiss contradict the grant of summary judgment.

provides that "[a]n appellee may, without taking a cross-appeal . . . raise issues on appeal for the purpose of enabling the appellate court to affirm . . . ." "Under this rule, an appellee need not cross-appeal to raise an issue that would preserve the judgment below." *Cochrell v. Mitchell*, 2003-NMCA-094, ¶ 12, 134 N.M. 180, 75 P.3d 396 (alteration, internal quotation marks, and citation omitted). Moreover, "prudential rules of judicial self-governance, like standing, ripeness, and mootness, are founded in concern about the proper—and properly limited—role of courts in a democratic society and are always relevant concerns." *New Energy Econ., Inc. v. Shoobridge*, 2010-NMSC-049, ¶ 16, 149 N.M. 42, 243 P.3d 746 (internal quotation marks and citation omitted). Thus, we will address whether the issues presented are moot.

**{10}** This case is arguably moot as the directives, regulations, and guidance at issue have been voluntarily repealed or have otherwise expired, and the underlying health emergency that precipitated this dispute has ended. *See* 6.12.14.7(A) NMAC (defining alternate work assignments); 6.12.14.8 NMAC (discussing restrictions on in-person learning); 6.12.14.8(A)(2) NMAC (discussing surveillance testing programs); *see also* 32 N.M. Reg. 156 (Feb. 23, 2021) (proposing the repeal of 6.12.14.8(A)(8) NMAC (2/11/21), which addressed the provision of school meals); State of N.M. Exec. Order 2023-0036 (March 3, 2023) (setting the health emergency expiration date for March 31, 2023)[2]. However, we conclude that the scope of PED's authority is an issue that is capable of repetition but evading review. *See Cobb v. State Canvassing Bd.*, 2006-NMSC-034, ¶ 29, 140 N.M. 77, 140 P.3d 498 ("The State Canvassing Board's act . . . is capable of repetition yet evading review for two reasons: (1) the short statutory time frame for election contests, recounts, and rechecks . . . make judicial review of error or fraud difficult; and (2) . . . the State Canvassing Board's actions . . . may be repeated."). First, the exigent circumstances predicating PED's actions, and the time it takes to obtain judicial review, makes review of PED's authority in an emergency situation difficult. Second, PED's rulemaking actions may be repeated. Accordingly, we exercise our discretion to address Plaintiffs' arguments in turn.

## II.    Plenary Authority

**{11}** First, Plaintiffs contend that the district court misinterpreted the Public School Code based on the connection between Section 22-2-1 and Section 22-5-4. Section 22-2-1(A) states that "[t]he secretary [of PED] is the governing authority and shall have control, management and direction of all public schools, except as otherwise provided by law." Section 22-5-4(A) grants local school boards the power or duty to "develop educational policies for the school district," "subject to the rules of [PED]." While both sections contain caveats to the authority granted, Plaintiffs contend that local school board authority is (1) not limited by rules, guidance, and directives implemented by PED that exceed its authority under Section 22-2-1(A);[3] and (2) superseded by statutory

2https://cv.nmhealth.org/wp-content/uploads/2023/03/Executive-Order-2023-036.pdf.
3Plaintiffs additionally suggest that PED's constitutional authority is tethered to the financial administration of school districts and the implementation of federal funding programs. In those contexts, Plaintiffs concede that when the authority of PED and local school boards overlaps, PED's authority controls. However, Plaintiffs do not argue that we should consider the constitutional scope of PED's

grants of local school board authority that overlap with the grant of authority to PED. Citing *Alarcon v. Albuquerque Public Schools Board of Education*, 2018-NMCA-021, 413 P.3d 507, Plaintiffs maintain that PED's authority under Section 22-2-1(A) "only appears" to be exclusive and that because that authority is shared with local school boards pursuant to Section 22-5-4(A), "PED never had statutory authority to simply act unilaterally in this case without the support and agreement of its partners in public education." We disagree.

**{12}** *Alarcon* does not support a conclusion that any partnership anticipated by the public education code requires PED to consult with local school boards before implementing policy-related regulations. In *Alarcon*, 2018-NMCA-021, ¶ 1, this Court considered a dispute between a local school board and a school district about personnel matters. The school district argued that "personnel matters" did not fall within the school board's policy-making authority under Section 22-5-4(A). *Alarcon*, 2018-NMCA-021, ¶ 61. This Court's analysis centers on the policy-making authority of a school board, and in doing so noted, "[T]hat each local board is a partner with [PED] in making education policy for that particular school district by taking into account the state's multicultural diversity to achieve student success." *Id.* ¶ 65. That analysis, however, in no way diminishes PED's authority or recognizes a requirement that PED must consult with a local school board before taking policy-related actions. Instead, *Alarcon* considered whether a local school board had authority to take a particular personnel-related policy action.

**{13}** Plaintiffs make their case for the power balance between PED and local school officials in a vacuum, outside the context of a specific dispute about a specific action by PED that Plaintiffs argue is not supported by law. Plaintiffs relate the history of local authority over education, shifts in power resulting from the creation of PED and its predecessor, and case law that has limited PED's authority under Section 22-2-1(A) to act in certain situations. The district court's ruling, Plaintiffs argue, results in unlimited authority to PED that strips local school officials of any final authority. However, the district court did not rule that PED had unlimited power, and we reject Plaintiffs' premise that the necessary result of the rulings in the present case is complete usurpation of local school board authority. Plaintiffs' cited authority demonstrates that PED's power under Section 22-2-1(A) may be challenged when a party with standing believes that a particular action was outside PED's authority. Neither Section 22-2-1(A) nor Section 22-5-4(A) broadly prohibit PED from acting, as Plaintiffs contend, "unilaterally," or require PED to consult with local school authorities before taking any policy-related action at all.

**{14}** We decline to broadly rule that PED exceeded its authority by generally failing to consult with Plaintiffs or generally acting "unilaterally." Plaintiffs' proposition that local school boards are favored when statutory authority with PED overlaps disregards the language in Section 22-2-1(A) that subjects the policy-making authority of local school

---

authority and we do not consider the matter. We do note that New Mexico courts have upheld PED's constitutional authority to enact regulations that do not concern financial matters. *See, e.g., State ex rel. Stapleton v. Skandera*, 2015-NMCA-044, ¶¶ 7-14, 346 P.3d 1191 (holding that PED did not exceed its authority in regulating the evaluation of teachers).

boards "to the rules of the department." *See Alarcon*, 2018-NMCA-021, ¶ 65 (observing that "a local school board has the 'powers or duties' to 'develop educational policies for the school district' (that are 'subject to the rules of the department') in Section 22-5-4(A))." To the extent Plaintiffs believe this is a misplaced or imprudent policy—that is a matter for the Legislature. Accordingly, Plaintiffs have not met their burden to demonstrate that the district court misinterpreted the Public School Code. To the extent that Plaintiffs argue that PED's specific actions exceeded its authority or impinged on Plaintiffs' authority, we address those arguments.

{15}    Plaintiffs point to three specific actions they contend PED did not have authority to take. First, Plaintiffs challenge PED's direction to continue paying school employees. However, Plaintiffs do not explain why PED lacked authority to enforce the statutory mandate that contracts with licensed employees "shall be for a period of one school year." *See* § 22-10A-21(B)(1); § 22-2-2(A) (requiring that PED properly and uniformly enforce the provisions of the Public School Code); *see also Aguilera v. Bd. of Educ.*, 2005-NMCA-069, ¶ 26, 137 N.M. 642, 114 P.3d 322 (explaining that the consideration underlying a contract between a teacher and a school district is the school district's "promise[] to employ the teacher for a given term" and a teacher's "promise[] to perform [the] job for the duration of the contract" (internal quotation marks and citation omitted)).

{16}    Second, Plaintiffs argue that PED had no authority to order that school-prepared lunches be delivered. However, Plaintiffs do not respond to PED's explanation of the school lunch program, who may receive lunches, and why incidental aid is permissible under the Antidonation Clause, as we discuss further below.

{17}    Lastly, Plaintiffs maintain that PED could not "impose terms and conditions of employment on local school districts and on school employees." This argument relates to PED's directions regarding COVID-19 testing and alternative work assignments for persons at increased risk of contracting COVID-19. Plaintiffs contend no statute permits PED "to take any action to direct local school personnel actions or direct the work performed by school employees" and that the "directive[s]" violated federal law. Defendants respond that PED's authority derives from Section 22-2-1(A) and NMSA 1978, Section 12-10-10(A) (2007), which governs the enforcement of executive orders, and that the directives complied with federal law. We agree. We have already rejected Plaintiffs' argument that a specific grant of authority to PED is necessary for PED to act according to its broad authority under Section 22-2-1(A) or that any overlap between local school board authority and PED authority favors local school boards. The Secretary "is the governing authority and shall have control, management and direction of all public schools, except as otherwise provided by law." *Id.* Plaintiffs contend that the law does "otherwise provide[]" because (1) federal law limits mandatory testing to "employers" and PED was not the employer of a school employee; and (2) alternative work assignments are essentially workplace accommodations, which much be requested of and addressed by an employer through specific processes. While employers may be required to take the actions outlined in the statutes Plaintiffs have cited, Plaintiffs point to no provision that prohibits PED from also exercising its authority under Section 22-2-1(A).

**{18}** In conclusion, Plaintiffs have not demonstrated that PED lacked the authority to take these actions and we accordingly affirm the district court.

## III.  Antidonation Clause

**{19}** Next, Plaintiffs contest the constitutional validity of PED's guidance and regulations regarding the continued payment of school employees when "no work" was performed and the provision of school lunches to students and nonstudents during COVID-19-related school closures. *See* 6.12.14.9(C) NMAC (1/29/21) (repealed 2/11/2021) (discussing the provision of school meals). Because we conclude that Plaintiffs fail to meet their burden on appeal, we affirm the district court's conclusions regarding the Antidonation Clause.

**{20}** The Antidonation Clause, Article IX, § 14, of the New Mexico Constitution provides that "[n]either the state nor any county, school district or municipality . . . shall directly or indirectly lend or pledge its credit or make any donation to or in aid of any person . . . ." For purposes of Article IX, Section 14, a donation is "a gift, an allocation or appropriation of something of value, without consideration." *Moses v. Ruszkowski*, 2019-NMSC-003, ¶ 50, 458 P.3d 406 (internal quotation marks and citation omitted). The Antidonation Clause is only implicated if public funds are lent or are used to make a gift or donation. *See id.* ("[Our Supreme Court] has found violations of the Antidonation Clause in circumstances involving an outright gift of public money to a private individual or entity."); *Hotels of Distinction W., Inc. v. City of Albuquerque*, 1988-NMSC-047, ¶ 7, 107 N.M. 257, 755 P.2d 595 ("The [A]nti[]donation [C]lause clearly proscribes the lending of public funds for private purposes.").

**{21}** Below, Defendants asserted that the continued payment of employee salaries was authorized pursuant to employment contracts and thus continued payment was required by statute. *See* § 22-10A-21(B) (mandating the one school year term for contracts between the superintendents and licensed school employees); *see also* § 22-2-2(A) (assigning to PED the duty to enforce the provisions of the Public School Code). Defendants also argued that the provision of school-prepared meals did not violate the Antidonation Clause because federal funds and waivers were used to continue the program during COVID-19-related school closures. In granting Defendants' motion for summary judgment, the district court concluded that "[t]he continued payment of school employees was consistent with employment contracts in this case" and that "the channeling of meals to eligible students through a qualified school meals program did not violate the Anti[d]onation Clause."

**{22}** On appeal, Plaintiffs argue that the district court erred because, "as the PED was not the employers of school employees, the PED could not point to any comprehensive employee or public local employee benefits program to establish that the gifts, aid and donations directed are actually earned or part of employment or by citizenship." Moreover, Plaintiffs argue that the regulation regarding the provision of school meals directed a violation of the Antidonation Clause because "[t]he PED did not even attempt to connect the gifts, aid and donation to any comprehensive benefits or welfare-type or

aid program promulgated by the Legislature." These arguments fail to demonstrate error, and we explain.

**{23}** First, Plaintiffs do not contest the district court's findings that (1) the payment of employee salaries was consistent with existing employment contracts; and (2) school meals were provided pursuant to a qualified school meals program. Accordingly, we accept these findings on appeal. *See Martinez v. Sw. Landfills, Inc.*, 1993-NMCA-020, ¶ 18, 115 N.M. 181, 848 P.2d 1108 ("[A]n appellant is bound by the findings of fact made below unless the appellant properly attacks the findings, and . . . the appellant remains bound if [they] fail[] to properly set forth all the evidence bearing upon the findings."). Second, Plaintiffs do not indicate evidence in the record that would create a genuine dispute of fact that would preclude the grant of summary judgment. By way of example, Plaintiffs have not demonstrated that salaries were paid when "no work" was performed and that payments were made in violation of employment contracts, that school prepared meals were given to nonstudents, or that the provision of school-prepared meals was funded with federal money, rather than state public funds. *See Villalobos v. Bd. of Cnty. Comm'rs*, 2014-NMCA-044, ¶ 5, 322 P.3d 439 ("Summary judgment is proper where there is no evidence raising a reasonable doubt that a genuine issue of material fact exists."). Finally, Plaintiffs have not developed any argument about how the delivery of meals to nonstudents would constitute a violation of the Antidonation Clause. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)). Accordingly, we conclude that Plaintiffs have not demonstrated that the district court erred in granting Defendants summary judgment and denying Plaintiffs partial summary judgment.

## IV.    Free and Sufficient Public Education

**{24}** Next, Plaintiffs assert that PED's regulation limiting in-person learning during the COVID-19 pandemic violated all students' New Mexico constitutional right to a free and sufficient public education. *See* 6.12.14.8(A), (B) NMAC; N.M. Const. art. XII, § 1 (requiring the state to establish and maintain "[a] uniform system of free public schools sufficient for the education of, and open to, all the children of school age in the state."). Specifically, Plaintiffs argue that the district court erred in in granting summary judgment because (1) the court applied an inapplicable federal standard to determine whether students were deprived of a sufficient education; and (2) there was a genuine dispute of fact as to whether a sufficient education was provided and "as to whether the PED prohibited actually in-person instruction." Because we conclude that Plaintiffs failed to meet their burden to oppose Defendants' prima facie showing on summary judgment, we further conclude that the district court did not err. We explain.

**{25}** In their motion for summary judgment, Defendants asserted that PED's regulations did not violate students' state constitutional right to a "free and appropriate public education." Defendants relied on *Hernandez v. Lujan Grisham*, F. Supp. 3d 1013 (D.N.M. 2020), to argue "that PED's school re-entry guidelines do not deny students a

[free appropriate public education (FAPE)]," as articulated in the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1482.[4] In granting Defendants' motion for summary judgment, the district court found and concluded that "PED's restrictions on in-person learning did not violate a constitutional right to a free and adequate public education" and that "[Plaintiffs] did not offer legal authority to establish that a [FAPE] requires the in-person instruction of students in public school during a public health emergency."

**{26}**     On appeal, Plaintiffs argue that the federal FAPE standard is inapplicable to Plaintiffs' claim under the New Mexico Constitution. Plaintiffs further argue that the correct standard for determining whether students were deprived of a sufficient education due to restrictions on in-person learning was the standard as set forth in *Yazzie-Martinez*.[5] Under this standard, Plaintiffs argue that the district court should have concluded that restrictions on in-person learning deprived students of a sufficient education because, if "at risk students in the [s]tate had been deprived of an appropriate public education in the *Yazzie-Martinez* case when there was unrestricted in-person instruction taking place, then certainly when all students were then deprived of in-person instruction and some also deprived of remote instruction . . . [they were] deprived of their right to a uniform and appropriate public education in violation of [s]tate [c]onstitution."

**{27}**     We need not determine whether the district court used the incorrect legal standard in granting summary judgment because Plaintiffs did not meet their burden to factually dispute Defendants' evidence that its policies provided a sufficient education as required by the New Mexico Constitution. Defendants provided an affidavit from PED's Director of the Safe and Healthy Schools Bureau at the time the relevant regulation restricting in-person learning was adopted, stating that the "PED provided thousands of laptop computers and related technology to students, as well as information and support to assist students and teachers with remote learning." By providing an affidavit supporting Defendants' assertion that PED provided accommodations to students such that they could continue to receive a sufficient public education during the suspension of in-person learning, Defendants made a prima facie showing that they were entitled to summary judgment on Plaintiffs' claim that PED's remote learning policy deprived students of a sufficient education. *See Ridlington v. Contreras*, 2022-NMSC-002, ¶ 14, 501 P.3d 444 ("[T]he moving party has the burden to make a prima facie showing that there is no genuine issue of fact as to one or more of the requisite elements in the non[]movant's claim." (internal quotation marks and citation omitted)). As such, the burden shifted to Plaintiffs "to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *See Bank of N.Y. Mellon*, 2014-NMCA-097, ¶ 6 (internal quotation marks and citation omitted). Plaintiffs

---

[4]Under the IDEA, states are required to provide every eligible child with a free appropriate public education. *See Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist*. RE-1, 580 U.S. 386, 390 (2017).
[5]Plaintiffs fail to provide us with the relevant order from *Yazzie-Martinez* in the record. We remind Plaintiffs that "[i]t is the duty of the appellant to provide a record adequate to review the issues on appeal." *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 65, 146 N.M. 853, 215 P.3d 791. However, this decision takes judicial notice of district court documents that are not in the record, but are accessible on Odyssey. See Rule 11-201(B)(2) NMRA.

failed to provide any evidence below about the insufficiency of providing laptops, technology, and other assistance, and fail to do so now on appeal. Instead, Plaintiffs assert that the FAPE standard is inapplicable and that remote learning must be constitutionally insufficient because a district court in *Yazzie-Martinez* determined that certain "unrestricted in-person instruction" was insufficient and violated students' constitutional rights due to deficiencies in public education that were supported by a significant amount of evidence. *See* Decision & Order, *Yazzie-Martinez*, D-101-CV-2014-00793 (1st Jud. Dist. Ct. July 20, 2018). Neither of these assertions establish the existence of a genuine issue of fact that would preclude the granting of summary judgment. Thus, we conclude that Plaintiffs failed to meet their burden on summary judgment and the district court did not err.

## V. Retaliation

**{28}** Finally, Plaintiffs argue that there was a genuine dispute of material fact regarding retaliation sufficient to preclude summary judgment. However, because Plaintiffs have failed to articulate how the facts asserted fit within any particular cause of action, we decline to address this issue. To determine whether there was a material dispute of fact regarding retaliation, this Court must look to the elements of the substantive claim. *See Oakey, Est. of Lucero v. May Maple Pharmacy, Inc.*, 2017-NMCA-054, ¶ 15, 399 P.3d 939 ("An issue of fact is 'material' if the existence (or non[]existence) of the fact is of consequence under the substantive rules of law governing the parties' dispute." (internal quotation marks and citation omitted)). However, Plaintiffs fail to identify the substantive rules of law to which the district court should have applied the evidence, and they fail to identify such a cause of action on appeal. Because Plaintiffs have not identified the rule of law that governs their dispute, we decline to address this issue. *See Elane Photography*, 2013-NMSC-040, ¶ 70 ("We will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)). Accordingly, we affirm the district court's grant of summary judgment in regard to Plaintiffs' claim of retaliation.

## CONCLUSION

**{29}** For the foregoing reasons, we affirm the district court.

**{30} IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**KATHERINE A. WRAY, Judge**